IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAYMONDE E. WILSON, individually and as Executor of the Estate of Thomas E. Wilson, deceased, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV 05-384-JHP ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) |

## ORDER and OPINION

Before the Court is Defendant's Motion for Partial Summary Judgment, Plaintiff's Response in opposition, and Defendant's Reply thereto. Defendant seeks judgment as a matter of law on Plaintiff's wrongful death claim. Defendant alleges that the Oklahoma wrongful death statute, 12 Okla. Stat. § 1053, only recognizes a cause of action if the decedent might have maintained an action for the same injury had he lived, and that Plaintiff's decedent, Thomas E. Wilson, did not have a claim for personal injury resulting from failure to diagnose cancer at the time of his death, because the statute of limitations, 28 U.S.C. § 2401(b), had run. Plaintiff disputes the date of accrual of Mr. Wilson's cause of action and thus, the propriety of the motion for summary judgment. These are the issues before the Court.

## Background

Plaintiff Raymonde E. Wilson and her decedent Thomas E. Wilson were married and residing in Hulbert, Oklahoma at the time of the events giving rise to this lawsuit. Mr. Wilson obtained an honorable discharge from the United States Air Force in the 1970s and, pursuant to his benefits, obtained regular medical care from the Veterans Administration Medical Center

1

(VAMC) in Muskogee, Oklahoma, and occasional medical care from the VAMC in Oklahoma City, Oklahoma. The VAMC followed Mr. Wilson for various chronic conditions, including diabetes, hypertension, coronary artery disease, and bursitis. [Compl. at 2, ¶ 9.] Mr. Wilson's medical records also reflect a history of hemotochezia (bloody stools) dating back to at least June 1985. [Def. Reply, Ex. 1 at 1.]

Mr. Wilson's medical records indicate that he underwent a flexible colonoscopy[1] in July 1985, which procedure revealed no evidence of any source of hematochezia. [Def. Reply, Ex. 1 at 3.] A follow-up double contrast barium enema[2] was performed in September 1985, also with unremarkable results. [Def. Reply, Ex. 1 at 6.] Another follow-up was performed in January 1986, with no abnormalcy detected. [Def. Reply, Ex. 1 at 7.] In July 1986, Mr. Wilson reported no further problems with rectal bleeding. [Def. Reply, Ex. 1 at 8.]

No records were provided for the period August 1986 through at least 1995.[3]

Sometime after October 1996, Mr. Wilson answered "yes" on a "Risk Screening Tool"

---

[1] The terms "colonoscopy" and "flexible sigmoidoscopy" are used somewhat interchangeably in the medical records, so the exact nature of this test is unclear. Both procedures are used to screen for colorectal cancer. Flexible sigmoidoscopy is generally performed every five years, and colonoscopy every ten years.

[2] The American Cancer Society generally recommends a double contrast barium enema as an alternative to fecal occult blood testing (FOBT), flexible sigmoidoscopy, or colonoscopy, and is usually conducted every five years for screening purposes. [Def. Reply, Aff. of Malcolm L. Hayward, M.D., ¶ 10.c.]

[3] Both Plaintiff and Defendant provided medical records to the Court, and these entries are absent from both. There are three miscellaneous entries on Mr. Wilson's medical records dated January 14, 1987, January 7, 1997, and August 6, 1997, which entries do not appear to be relevant. Two "Risk Screening Tools" intervene, and are discussed above. The next actual medical record is dated September 18, 1998.

administered by the VAMC in response to the following question:

> **COLON CANCER: This type cancer certainly can be found early and treatment is really important. Testing for hidden blood in the stool helps find this.** Did the doctor check your stool for blood or did you remember to ask him to do the test?

[Def. Reply, Ex. 1 at 10.] Mr. Wilson answered "yes" to the same question on a "Risk Screening Tool" dated September 11, 1998. [Def. Reply, Ex. 1 at 13.] He also underwent a digital rectal exam that year, which revealed a small hemorrhoid. [Pltf. Resp., Ex. 1 at 1.] Fecal occult blood testing (FOBT)[4] was subsequently ordered for Mr. Wilson in March 1999, April 1999, May 1999, and June 1999. [Def. Reply, Ex. 1 at 15-18.] On November 29, 1999, Mr. Wilson underwent a flexible sigmoidoscopy,[5] but preparation was poor and results were unsatisfactory. [Def. Reply, Ex. 1 at 19.] The procedure was rescheduled for December 20, 1999 [Def. Reply, Ex. 1 at 23], but it does not appear that Mr. Wilson underwent the rescheduled test. On January 25, 2000, Mr. Wilson underwent additional FOBT. [Def. Reply, Ex. 1 at 20.] This FOBT was positive, and a follow-up colonoscopy was ordered.[6] [Def. Reply, Ex. 1 at 21-23.]

On February 7, 2000, Mr. Wilson was diagnosed with a rectal tumor, and he was recommended for surgery later that month. [Pltf. Resp., Ex. 1 at 11-12.] Mr. Wilson was advised

---

[4]The American Cancer Society generally recommends FOBT as an annual test to screen for colorectal cancer. [Def. Reply, Aff. of Malcolm L. Hayward, M.D., ¶ 10.a.]

[5]The American Cancer Society generally recommends flexible sigmoidoscopy as an alternative to FOBT, to be conducted every five years. [Def. Reply, Aff. of Malcolm L. Hayward, M.D., ¶ 10.b.]

[6]Despite these records, Plaintiff avers that, prior to Mr. Wilson's February 2000 diagnosis, "he had never been advised by any VA health care provider that he was at risk for colon cancer or that he should have any testing done to rule out or screen for colon cancer." [Pltf. Resp., Ex. 2, Aff. of Raymonde Wilson at 1, ¶ 3.]

that there was no need for adjuvant therapy.[7] [Pltf. Resp., Ex. 1 at 17.] However, the "Tumor Board" did recommend "[c]olonoscopy to be done soon and then every 1 to 3 years."[8] [Pltf. Resp., Ex. 1 at 18.]

No records were provided for the period May 2000 through April 2003.

On May 21, 2003, Mr. Wilson underwent an abdominal CT scan, the report of which references a prior CT scan on February 5, 2001. [Pltf. Resp., Ex. 1 at 19.] The May 2003 scan revealed a "large destructive mass . . . suggestive of metastatic disease," which was an "interval change" from the February 2001 scan. [Id.] On June 4, 2003, Mr. Wilson's doctors requested a biopsy, but noted that Mr. and Mrs. Wilson preferred to have "chemotherapy and irradiation if indicated without the biopsy." [Pltf. Resp., Ex. 1 at 22.] Mr. and Mrs. Wilson were still reluctant to get the biopsy on June 17, 2003. [Pltf. Resp., Ex. 1 at 24.] Palliative radiation was ordered on June 18, 2003 to relieve Mr. Wilson's pain. [Pltf. Resp., Ex. 1 at 25.] No medical records were provided to describe what treatment Mr. Wilson received from the VAMC after this point.

Approximately two weeks before Mr. Wilson's death (*i.e.*, in August 2003), he consulted with Plaintiff's personal doctor, who broke the news that Mr. Wilson was dying. [Pltf. Resp., Ex. 2, Aff. of Raymonde Wilson at 2, ¶ 7.] The VMAC never informed Mr. and Mrs. Wilson of his poor prognosis. [Id.] Mr. Wilson died of colon cancer on August 24, 2003. [Pltf. Resp. at 2, ¶ I.4.] Plaintiff alleges that agents and/or employees of the Muskogee VAMC and the Oklahoma

---

[7]Mr. Wilson's cancer was diagnosed as Stage I. The probable cure rate of Stage I colorectal cancer is ninety-two percent (92%). Based on the early, non-invasive stage of Mr. Wilson's cancer, the decision to forego chemotherapy or radiation was reasonable. [Pltf. Resp., Ex. 3, Aff. of James J. Stark, M.D. at 1-2, ¶¶ 5-6.]

[8]Colonoscopy is usually recommended every ten (10) years to screen for colorectal cancer. [Def. Reply, Aff. of Malcolm L. Hayward, M.D., ¶ 10.d.]

4

City VAMC deviated from the appropriate standards of medical care when tending to Mr. Wilson in the following respects:

1. Negligent failure to recommend and/or provide appropriate colon cancer screening tests from at least January 1991 to November 1999;

2. Negligent failure to prepare Mr. Wilson for a flexible sigmoidoscopy performed November 29, 1999;

3. Negligent failure to promptly reschedule sigmoidoscopy after unsatisfactory results of the November 29, 1999 exam;

4. Negligent delay in diagnosing rectal cancer;

5. Negligent failure to recommend appropriate treatment upon diagnosis of Mr. Wilson's rectal cancer in February 2000;

6. Negligent failure to order repeat colonoscopies at appropriate intervals subsequent to the diagnosis of rectal cancer;

7. Negligent failure to investigate and diagnose the cause of Mr. Wilson's complaints of tailbone and back pain upon its onset in April 2002; and

8. Negligent delay in diagnosing the recurrence of colorectal cancer in May 2003, resulting in Mr. Wilson's death on August 24, 2003 at the age of seventy-three (73).

Plaintiff filed claims with the United States Department of Veterans Affairs on August 3, 2004. [Def. Mtn. at 2.] Upon the Department's failure to make a final disposition of her claim within six months, Plaintiff filed the instant lawsuit, pursuant to 28 U.S.C. § 2675. Plaintiff asserts both a survival action and a wrongful death claim. Defendant's Motion for Summary Judgment addresses only the wrongful death claim, for which Plaintiff demands three million dollars ($3,000,000) in compensation.

**Discussion**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249.

In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999). The Court does not consider irrelevant or unnecessary factual disputes. Anderson v. Liberty Lobby, 477 U.S. at 248. However, the presence of a genuine issue of material fact defeats the motion.

The instant summary judgment motion requires the Court to evaluate when Plaintiff's cause of action against VAMC accrued for purposes of the Federal Tort Claims Act's statute of limitations. Under the facts presented above, if the action accrued prior to August 3, 2002, the claim is barred, and summary judgment is appropriate. *See* 28 U.S.C. § 2401(b) ("A tort against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."). In medical malpractice claims brought under the Federal Tort Claims Act, a cause of action accrues at the point when the plaintiff has discovered both his injury <u>and</u> its cause. U.S. v. Kubrick, 444 U.S. 111, 120 (1979). The accrual of a claims does <u>not</u> require the plaintiff to know that his injury was negligently

inflicted. Id. at 123. If any genuine dispute exists as to the facts relevant to the statute of limitations defense, such as the plaintiff's knowledge of the facts necessary to determine the cause of the injury asserted, summary judgment is inappropriate. *See* Rice v. U.S., 889 F. Supp. 1466, 1472 (N.D. Okla. 1995) (denying summary judgment where "[t]he applicability of the statute of limitations turns on the resolution of issues of fact and credibility of key witnesses").

### I. Injury

Mr. Wilson suffered from colorectal cancer, which Plaintiff first discovered in February 2000, and again upon Mr. Wilson's relapse in May 2003. Plaintiff argues that the second diagnosis, in May 2003, is the appropriate time for the statute of limitations to start running, because it "represents the earliest point in his treatment when there was any reason to conclude that Mr. Wilson had lost a substantial chance for survival." [Pltf. Resp., Ex. 3, Aff. of James J. Stark, M.D. at 2, ¶ 8.][9] However, "[t]o be aware of an injury, a plaintiff need not know the full extent of his or her injury. The limitations period will run even though the ultimate damage is unknown or unpredictable." Rice, 889 F. Supp. at 1470. Furthermore, a cause of action in a failure to diagnose case does not necessarily accrue whenever the plaintiff receives a different diagnosis from a previous diagnosis and is aware that he has been injured. Arvayo, 766 F.2d at 1422.

---

[9]Dr. Stark further opined that "[b]ased on [his] review of the records, it was entirely reasonable for Mr. Wilson to believe prior to May 2003 that he had not been harmed by any avoidable delay in making the original diagnosis of cancer." [Pltf. Resp., Ex. 3, Aff. of James J. Stark at 2, ¶ 9.] However, this opinion, which implies that the original diagnosis of cancer could have been made earlier, seems to be at odds with his finding in paragraph 7 that no necessary screening was withheld, and that earlier screening and diagnosis would not have made an appreciable difference in the outcome.

7

Here, Plaintiff complains that the VAMC never disclosed that Mr. Wilson was "at risk" for colon cancer or should have had screening tests done prior to his February 2000 diagnosis.[10] Thus, if Mr. Wilson's injury is defined as failure to diagnose cancer **in the first instance**, Mr. and Mrs. Wilson could reasonably be expected to realize that Mr. Wilson was, indeed, "at risk" for colorectal cancer as of the February 2000 diagnosis.

Moreover, Mr. Wilson's medical records clearly show that aggressive screening was recommended after the February 2000 diagnosis and subsequent surgery.[11] Thus, if Mr. Wilson's injury is defined as failure to diagnose the **ongoing risk** of colorectal cancer, the information provided on April 13, 2000, when the "Tumor Board" made its post-operative recommendation that Mr. Wilson have a colonoscopy every one to three years, was surely sufficient to put Mr. and Mrs. Wilson on notice of Mr. Wilson's injury.

If, however, the injury is defined as a "lost chance" for survival due to colorectal cancer, the May 2003 diagnosis could be the more appropriate date of accrual. In that event, the only relevant negligent acts attributable to the VAMC – if any – would have occurred <u>after</u> Mr. Wilson's surgery in 2000, which both parties' experts, as well as the VAMC doctors and, seemingly, Mr. and Mrs. Wilson, reasonably expected would cure Mr. Wilson's cancer.

---

[10]The medical records provided by both parties, though incomplete, clearly indicate that Mr. Wilson was screened for colorectal cancer and was at least minimally educated about the purpose of the screening procedures.

[11]Mr. Wilson was advised to have a colonoscopy "soon and then every 1 to 3 years." [Pltf. Resp., Ex. 1 at 18.] Mr. Wilson's compliance with this recommendation is unclear. At the very least, Mr. Wilson underwent abdominal CT scans in February 2001 – less than one year after his surgery – and May 2003. [Pltf. Resp., Ex. 1 at 19.]

8

**II. Cause**

Of course, cancer is organic, and is not literally "caused" by mistreatment or medical negligence. The issue of causation is therefore more difficult here. Case law does recognize, however, that "there is a basic theoretical distinction between malpractice cases involving a 'commission' – an affirmative act which results in clearly identifiable injuries – and malpractice cases involving an 'omission,' *i.e.*, a failure to diagnose, treat, or warn," that applies to the issue of causation. *See* Arvayo v. U.S., 766 F.2d 1416, 1419 (10th Cir. 1985). Generally, "the causation element is satisfied when a plaintiff has knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the relevant treatment [or lack thereof] and injury or (b) to seek professional advice, and then with that advice, to conclude that there was a causal connection between the treatment [or lack thereof] and the injury." Rice, 889 F. Supp. at 1470 (citing MacMillan v. U.S., 46 F.3d 377, 381 (5th Cir. 1995) and Harrison v. U.S., 708 F.2d 1023, 1027 (5th Cir. 1983)) (internal quotations omitted). Once a plaintiff has the requisite knowledge of his or her injury, the plaintiff has the burden of reasonable diligence to inquire as to the cause of the injury. Id. (citing Arvayo, 766 F.2d at 1422). In this regard, Plaintiff's situation is akin to that of the plaintiff in Gustavson v. U.S., 655 F.2d 1034 (10th Cir. 1981):

> Inasmuch as the plaintiff . . . was not explicitly informed as to a possible connection between [his colorectal cancer and the lack of regular cancer screening], [the court] implicitly placed a burden upon him to discover not only whether these doctors breached a duty to him, but also to discover in the first instance whether there was a causal connection between their actions, or inactions, and his injury.

Arvayo, 766 F.2d at 1422 (discussing Gustavson and the plaintiff's burden of reasonable diligence). Thus, the inquiry into causation depends on when – and whether – Plaintiff here

9

knew the "critical facts" underlying the injury so as to trigger the duty to inquire. *See* Rice, 889 F. Supp. at 1470. Said "critical facts" need not include absolute knowledge of medical negligence. Kubrick, 444 U.S. at 123. Rather, the claim accrues whenever "a reasonable person should be prompted to inquire" into a link between the injury and the treatment, or lack thereof. Rice, 889 F. Supp. at 1470.

Plaintiff argues that the duty to inquire about a possible failure to diagnose necessarily arises later than it would after some affirmative medical care resulting in injury. In support of this proposition, Plaintiff cites McGraw v. U.S., 281 F.3d 997 (9th Cir. 2002):

> Under the government's reading [of the Federal Tort Claims Act], the mere knowledge of a worsening medical condition would put the plaintiff on constructive notice that he had a pre-existing condition, thereby compelling him to undertake an immediate investigation to determine if the condition developed because of a failure to diagnose. From a practical standpoint, this would be illogical. A person suffering from an illness should not be forced during a time of such emotional distress to conduct a hasty fishing expedition through medical files to preserve claims for a later date. Such an approach also places an unreasonable burden on the unwitting plaintiff who is a victim of a medical professional's failure to diagnose or disclose.

Id. at 1002-03. This analysis seems to be at odds with the Tenth Circuit's view of the duty to inquire, as established in Gustavson, which implies that a patient with a prior history (*e.g.*, one who has been treated once already for colorectal cancer) should take a very active role in his future care, and to learn as much about symptomatology, early diagnosis, and prevention as possible. *See* Arvayo, 766 F.2d at 1421 ("[A]n extension [of the Kubrick duty to inquire] has already occurred in this circuit. That is, the potential plaintiff already has the duty to inquire as to both 'causation' and 'negligence' in light of our holding in Gustavson.").

Plaintiff also cites Augustine v. U.S., 704 F.2d 1074 (9th Cir. 1983), for the proposition that patients should not be required to inquire into failure to diagnose to the same extent that they

10

would affirmative medical care resulting in injury. However, Augustine defines the accrual of a claim as occurring "when the patient becomes aware **or through the exercise of reasonable diligence should have become aware** of the development of a pre-existing problem into a more serious condition." Id. at 1078 (emphasis added). Of course, what is "reasonable" varies widely from case to case. Arvayo, 766 F.2d at 1422. Here, Mr. Wilson's history of hemotochezia, which dated back to at least 1985, seemingly ripened into rectal cancer in February 2000, which cancer seemingly progressed into colon cancer in May 2003. Given this history and, again, under the Tenth Circuit's view, the Court here finds that Mr. Wilson should have been exercising reasonable diligence. "Ignorance of cause is not necessarily an excuse that tolls the limitations period." Rice, 889 F. Supp. at 1470.

Indeed, the question of Plaintiff's reasonableness in pursuing the link between injury and treatment (or lack thereof) is an objective inquiry. Id. at 1471. In this case, Mr. Wilson was diagnosed with rectal cancer in February 2000, after undergoing no less than seven (7) screening procedures between September 1998 and January 2000. A reasonable person might <u>not</u> inquire about the link between the injury (cancer) and the treatment (screening, or lack thereof) at this point, given that testing was frequent and diagnosis was made at an early stage. Following his February 2000 diagnosis, Mr. Wilson underwent surgery which is an effective "cure" in over ninety percent (90%) of all cases involving early stage, non-invasive cancer. [Pltf. Resp., Ex. 3, Aff. of James J. Stark, M.D. at 1-2, ¶¶ 5-6.] Mr. Wilson was then advised to have a colonoscopy every one to three years to screen for reoccurrence of the cancer. Again, a reasonable person might <u>not</u> inquire about the link between the injury and the treatment at this point, given the success of the surgery and the recommendation for ongoing, aggressive cancer screening.

11

Indeed, a reasonable person could believe that the injury was completely unavoidable in the first place, and effectively eradicated at any rate.[12]

The record is unclear as to whether Mr. Wilson complied with the VAMC's recommendations to have regular and frequent colonoscopies. Of course, Mr. Wilson was entitled to rely on the VAMC to explicitly order such procedures, under the "continuous treatment" doctrine. Under the doctrine, a claim does not accrue until the end of a course of continuing medical treatment, if the treatment has been for the same illness or injury out of which the malpractice claim arose. See Page v. U.S., 729 F.2d 818, 823 n.36 (D.C. Cir. 1984); Brown v. U.S., 353 F.2d 578, 580 (9th Cir. 1965). Accordingly, Plaintiff here argues that Mr. Wilson did not know the cause of his injury (*i.e.*, that he had suffered an avoidable progression

---

[12]Again, the statute of limitations begins to run "once the plaintiff discovers that [the] injury is probably attributable to some act of those who treated [him or] her." Price v. U.S., 775 F.2d 1491, 1493 (11th Cir. 1985). Obviously, the "causation" element is not satisfied at this point, because Mr. Wilson's treatment was clearly above and beyond the standard of care [*see* Def. Reply, Aff. of Malcolm L. Hayward, M.D., ¶ 10], such that his injury was not properly attributable to the VAMC. Plaintiff's own expert opined that "Mr. Wilson's medical records contain no suggestion that he was ever advised that his cancer could have been detected and treated at any early time; or that any necessary screening was withheld; or that earlier screening and diagnosis would have resulted in an outcome different in any way from the surgical 'cure' provided in early 2000." [Pltf. Resp., Ex. 3, Aff. of James J. Stark, M.D. at 2, ¶ 7.] Dr. Stark did not offer a standard of care in his affidavit, or otherwise suggest, that Mr. Wilson's care to this point was in any way deficient.

Nonetheless, Plaintiff alleges negligent failure to recommend and/or provide appropriate colon cancer screening tests from at least January 1991 to November 1999 (for which period Mr. Wilson's medical records are largely unavailable), negligent failure to prepare Mr. Wilson for his November 1999 sigmoidoscopy, negligent failure to promptly reschedule the sigmoidoscopy, and negligent delay in diagnosing rectal cancer, as well as negligent failure to recommend appropriate treatment for Mr. Wilson's rectal cancer and negligent failure to order repeat colonoscopies at appropriate intervals subsequent to the diagnosis of rectal cancer. These allegations simply do not find support in the evidence reviewed by the Court, and the element of "causation" therefore seems practically irrelevant. These issues, however, are not yet formally before the Court.

of his colorectal cancer due to health care omissions on the VAMC's part) until May 2003 at the earliest, and in fact, probably died without ever realizing the potential link.

The Court does not necessarily agree with Plaintiff's analysis. For example, as discussed above, if the "injury" was failure to timely diagnose cancer in the first instance (*i.e.*, because of Mr. Wilson's history of hemotochezia dating back to at least 1985), Mr. and Mrs. Wilson could reasonably have been expected to inquire at the time of the February 2000 diagnosis whether the VAMC's previous course of treatment had been adequate and, if not, whether such inadequacy contributed to the initial development of Mr. Wilson's cancer. On the other hand, if Mr. and Mrs. Wilson trusted the surgical "cure" of Mr. Wilson's cancer, they might not have had reason to recognize his cancer as an "injury" under the FTCA until the second diagnosis in May 2003. However, depending upon the course of treatment the VAMC provided in the interim, and Mr. Wilson's compliance therewith, Mr. and Mrs. Wilson's duty to inquire may have arisen well before May 2003. Furthermore, under this analysis, the treatment provided by the VAMC <u>prior</u> to the surgery would be irrelevant.

Ultimately, the Court concedes that, in viewing the record in the light most favorable to the Plaintiff, sufficient evidence has not been presented to determine when Plaintiff's cause of action most likely accrued. Summary judgment would therefore be inappropriate at this time.

## **Conclusion**

Due to gaps in the medical records provided by the parties, the Court is unable to pinpoint when Plaintiff's claim accrued. The time period between Mr. Wilson's surgery in 2000, and the reoccurrence of his cancer in May 2003, for which few records were provided, is critical to this determination. If a showing is made that Mr. and Mrs. Wilson possessed the "critical

facts" necessary to trigger their duty to inquire at any time prior to August 3, 2002, the Court will be required to dismiss this count of the Complaint, based upon the Court's finding that Mr. and Mrs. Wilson had knowledge of Mr. Wilson's injury as early as the year 2000.[13]

For all the foregoing reasons, Defendant's Motion for Summary Judgment on Plaintiff's wrongful death claim is DENIED.

IT IS SO ORDERED this 26th day of May 2006.

*James H. Payne*
James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[13] On the other hand, if the Court finds Mr. and Mrs. Wilson had no knowledge of the injury, never mind the cause, until May 2003, the statute of limitations defense is completely inapposite, and the case will go forward in its entirety.